OPINION
{¶ 1} Tri-State Mobility Equipment Company, Inc., appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of Tri-State's co-defendant, Forward Motion, Inc., on a negligence claim filed by the estate of Benjamin Stevens.
 {¶ 2} The tragic events that led to this litigation are as follows.
 {¶ 3} In 2000, Benjamin Stevens, a 23-year-old quadriplegic, purchased a 2000 GMC van from Arbogast Buick Pontiac in Troy, Ohio. He also purchased specialized equipment to enable him to operate the van. This equipment included a "zero effort" power steering system manufactured by Creative Controls, Inc. The system included a "stock" power steering pump and a backup power steering pump designed to enable the vehicle to get off the road if the stock pump failed. Tri-State, which is located in Toledo, installed the system. Shortly thereafter, Stevens complained to Arbogast of problems with the power steering. Stevens did not want to send the van back to Toledo, so Abrogast contacted Forward Motions, a local company, about assessing the problem. Forward Motions replaced a seal in the backup pump.
 {¶ 4} Approximately two years later, on December 26, 2002, Stevens reported to his father that he was having problems with the power steering on the van. A short time later, the van caught fire while Stevens was driving it, causing fatal injuries.
 {¶ 5} On April 30, 2004, Stevens' parents, as administrators of his estate, filed a complaint against Creative Controls, Tri-State, and Forward Motions. No cross-claims were filed. On March 7 and 15, 2005, respectively, Forward Motions and Creative Controls filed motions for summary judgment. The estate subsequently dismissed its claims against Creative Controls. On April 29, 2005, Tri-State filed a memorandum in opposition to Forward Motions' motion for summary judgment. The estate did not oppose the motion. On August 15, 2005, the trial court granted Forward Motions' request for summary judgment.
 {¶ 6} Tri-State raises one assignment of error on appeal, asserting that the trial court erred in granting Forward Motions' motion for summary judgment. Forward Motions responds that summary judgment was properly granted because all of the evidence showed that it had not been negligent. The estate also filed a brief asserting that Tri-State lacked standing to appeal the summary judgment because it had not filed a cross-claim against Forward Motions. Our review of the documentary evidence reveals that summary judgment was properly granted in favor of Forward Motions, as discussed below. As such, we need not address whether Tri-State had proper standing to challenge the trial court's ruling.
 {¶ 7} Summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C) ; State exrel. Grady v. State Emp. Relations Bd., 78 Ohio St.3d 181, 183, 1997-Ohio-221, 677 N.E.2d 343; Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264. If the moving party satisfies its initial burden, "the nonmoving party then has a reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id.; see Civ.R. 56(E).
 {¶ 8} A negligence claim requires proof of three elements: existence of a legal duty, the defendant's breach of that duty, and an injury proximately caused by the defendant's breach.Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573, 788 N.E.2d 1088, ¶ 8. "There is no liability for damages upon the part of an automobile repairman unless he contracted to repair or service an automobile and failed to use ordinary skill and judgment in making such repairs or in performing such services. * * * No liability can be imposed upon [an automobile repairman] for its alleged failure to discover a latent defect, unless the evidence shows that it undertook to do so and negligently failed to discover the defect." Landon v. LeeMotors, Inc. (1954), 161 Ohio St. 82, 101, 118 N.E.2d 147.
 {¶ 9} The parties presented the deposition testimony of two experts as to the cause of the fire. The estate's expert, Victor Donatelli, opined that a steel tube had been improperly modified near the gear box on the stock steering pump when the system was installed, which had permitted a hose to slip off, spraying power steering fluid into the engine compartment where it caught fire. According to Donatelli, the manufacturer's instructions specified that a rubber stock hose, not the steel tube, was to be cut to attach the backup power steering pump. He attributed the mistake to careless workmanship. Donatelli stated that all of the connections to the backup steering pump were still in place at the time of the fire, and that the backup pump was not the source of the fire.
 {¶ 10} Tri-State's expert gave a different opinion as to the cause of the fire. Walter Herndon testified that, in his opinion, the fire had been ignited by a release of transmission fluid onto the exhaust system. His opinion was based primarily on burn patterns and the location of the worst fire damage. He did not offer any opinion about the condition of the power steering system.
 {¶ 11} Based on this evidence, the trial court found that there was "no question of material fact ** as to the claim that [Forward Motions] was negligent in the repair of Stevens' van" and entered summary judgment in favor of Forward Motions.
 {¶ 12} In its brief, Tri-State points to "conflicting evidence" about what work Forward Motions performed on Stevens' van. It claims that Forward Motions' work order and invoice must be construed as evidence that Forward Motions had reinstalled or rebuilt the backup power steering pump. If Forward Motions took such steps, Tri-State contends, Forward Motions' work on the backup steering pump would have been an intervening event that exonerated Tri-State if the back-up pump caused the fire.
 {¶ 13} The invoice upon which Tri-State relies does not establish negligence. It merely contains a description of the work that Forward Motions performed on Stevens' van. It states, in pertinent part: "Diagnose steering problem. Remove, repair and reinstall power steering pump system." The work order states: "Rebuild backup pwr. steering system (pump)." The Forward Motions employee who performed the work, Gilbert Smith, testified in greater detail at his deposition about the work that he performed. He stated that there were two long bolts connecting the backup pump's motor to the backup pump itself, with a seal between the two. He testified that he removed the bolts, lifted the motor from the pump, installed a new seal, and replaced the motor. According to Smith, he did not remove the pump casing at all. He denied doing any work around the stock power steering pump or the gear box for the system and denied disconnecting any hoses or steel tube lines as part of this repair. He also stated that he had not inspected the stock power steering pump. When questioned about the description on the invoice, Smith stated that the invoice did not accurately describe what he had done, which was simply to replace a seal. He also suggested, however, that the term "rebuild," as used on the work order, was a layman's term for the replacement of the seal. Smith denied having done any work on the lines that run between the stock pump and the backup pump — the lines that were implicated by Donatelli's opinion as to the cause of the fire. Smith's description of the manner in which the seal was replaced — i.e. that the motor would be lifted off and then returned after the replacement of the seal, without doing any work to the pump or the hoses — was consistent with Donatelli's description of the manner in which this repair should be completed.
 {¶ 14} Standing alone, the invoice did not create a genuine issue of material fact as to the cause of the fire. It was admitted as an exhibit to the experts' and Smith's depositions. Neither the estate's nor Tri-State's expert opined that the backup pump had been rebuilt or that the work performed at Forward Motions had contributed to the cause of the fire. The estate's expert, Donatelli, opined that the release of power steering fluid had caused the fire, but he clearly stated that the work performed by Forward Motions on the backup pump had not been related to the escape of power steering fluid and, therefore, the cause of the fire. Tri-State's expert, Herndon, pointed to a cause related to the release of transmission fluid. Smith was the only deponent with first hand knowledge of the work done on the van at Forward Motions. In his deposition, Smith provided a detailed description of the work he had done and emphatically denied that he had "rebuilt" or reinstalled the backup pump or had done any work on the lines connecting the pumps. This testimony was unrefuted. When viewed in the context of the deposition testimony, the invoice did not create a genuine issue of material fact precluding summary judgment.
 {¶ 15} Although the parties presented conflicting evidence that would have precluded summary judgment as to the exact cause of the fire, the trial court properly concluded that Forward Motions had met its initial burden of showing that there was no genuine issue of material fact that it had contributed to the cause of the fire. Tri-State's suggestion that Forward Motions' work on the backup pump was an intervening event that could have exonerated Tri-State fails because Tri-State failed to present any evidence that the backup pump was, indeed, the cause of the fire. Tri-State focuses on the invoice language, but this language at most raises a question about whether the invoice properly characterized the work that was performed at Forward Motions. It did not support an inference of negligence. Therefore, the reciprocal burden to establish a genuine issue for trial was not met, and the trial court correctly concluded that summary judgment in favor of Forward Motions was appropriate.
 {¶ 16} The assignment of error is overruled.
 {¶ 17} The judgment of the trial court will be affirmed.
Fain, J. and Valen, J., concur.
(Hon. Anthony Valen retired from the Twelfth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).